Although I concur with the majority in its analysis and conclusion, the record in this case presents factors that bode concern regarding post conviction mechanics and their treatment in capital cases in Ohio.
While it is understood that the referendum that led to the amendment of Section 2(B)(2)(c), Article IV, of the Ohio Constitution eliminating the courts of appeals from death penalty case processes was the primary result of efforts by certain advocates to shorten the time sequel between conviction and execution, this writer has been troubled by the lack of impact on this subject by the Ohio State Bar Association, the courts, including the Ohio Supreme Court, knowledgeable attorneys, and those from law enforcement and corrections personnel close to the scene.
A focused perusal of the dockets in capital cases in Ohio would support the unequivocal conclusion that the temporal concept of "inappropriate delay" was not on the "front side" of the ledger. I would translate this characterization as the process from indictment, trial, and appeal to the Ohio Supreme Court through its decision. My view of the statistics regarding these procedures indicates that these exercises seldom exceeded three to four years, even when the Ohio Courts of Appeals were involved.
The "inordinate delay" which was the primary gist of vocal critics obtained in what this writer would label as the "back side" of the death penalty case odysseys. Simply stated, these steps would include attempts to invoke the jurisdiction of the United States Supreme Court on claims of constitutional issues, and the variety of collateral attacks undertaken in the federal court system, viz., habeas corpus, etc., which often would add ten years or more to the time formula.
In its zeal to further shorten the time clock in this area, the Ohio General Assembly amended R.C. 2953.21 to eliminate the near infinite possibility of a stream of post conviction exercises, which has had a dramatic effect regarding death penalty cases. Although the goal to many was a salutary one, haste tends to create as many problems as those it elects to curtail. This case presents one of those conundrums.
Here, it is clear that the trial court applied the doctrine of resjudicata to certain issues advanced by appellant in the post conviction exercise before it in a "prospective manner". Appellant aptly argued before this court that certain issues raised in his post conviction petition had not been "fully litigated" to have matured to a ripened status of res judicata because the direct appeal of appellant's case was still pending before the Ohio Supreme Court when the trial court applied the foregoing principle in this case. The appellant relied on Hart SteelCo. v. Railroad Supply Co. (1917), 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed., and language from State v. Perry (1967), 10 Ohio St.2d 175, in advancing this specific argument before this court. With respect to this contention of appellant's, the majority applies a laconic, pragmatic, hindsight analysis based on the fact that the Supreme Court of Ohio reached its decision in appellant's direct appeal after the post conviction appeal was filed in the court, but before this court had an opportunity to reach its opinion and mandate in this post conviction appeal. State v. Carter
(1989), Ohio St.3d 593, decided 9/13/2000.
Thus, this writer feels constrained to join with the majority, but remains sympathetic to appellant's argument on this question.
Query, what if the trial court's prospective application of resjudicata turns out to be disharmonious with later rulings of the Ohio Supreme Court? Further, what if federal district or court of appeals views such an exercise under Ohio's post conviction statute as an inept facade in constitutional redress as some contend.
It would appear that trial courts may be well advised not to carry theJackson case holding to inappropriate extremes by dismissing such claims without hearing based on an unsure foundation of res judicata. The spectrum of Glenn v. Tate (6th Cir. Ohio 1995), 71 F.3d 1204, hovers in the background with the distinct possibility of a different federal attitude on such subjects. How, indeed, is expeditiousness served under these circumstances?
Certainly, this case scenario begs for legislative re-examination as to temporal mechanics of our post conviction statute.
 __________________ FORD, P.J.